IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM R. MILLER,

    **Plaintiff,**

v.

GREAT AMERICAN INSURANCE COMPANY,

    **Defendant.**

Case No. 20-2583-DDC

**MEMORANDUM AND ORDER**

Defendant Great American Insurance Company has filed a Motion for Sanctions (Doc. 66) against plaintiff William R. Miller. Defendant asserts that plaintiff misrepresented the origin of the claimed property damage at issue in this insurance coverage dispute. According to defendant, plaintiff based his lawsuit and his underlying insurance claim on the misrepresentation that more than 77,000 gallons of water flooded into the subsoils beneath his home. Defendant asserts that plaintiff knew as early as September 2019 that the 77,000-gallon water discharge had occurred more than 100 yards away, downhill from his home. And thus, plaintiff knew that the 77,000-gallon water discharge was unrelated to his insurance claim. But, defendant argues, it didn't learn about this misrepresentation until August 2021, when plaintiff testified at his deposition and corrected the misrepresentation.

By motion, defendant asks the court to sanction plaintiff for the alleged misrepresentation. Defendant seeks as an appropriate sanction an Order from the court: (1) excluding the opinions offered by plaintiff's expert, Paul Minto, and (2) awarding its attorney's fees and expenses incurred for plaintiff's deposition and those incurred preparing its

Motion for Sanctions. The court denies defendant's Motion for Sanctions. It explains why, below.

## I. Factual and Procedural Background

This lawsuit involves an insurance coverage dispute between plaintiff and defendant. Defendant issued an insurance policy to plaintiff ("the Policy"). Doc. 61 at 2 (Pretrial Order ¶ 3). The Policy provided insurance coverage for property that included plaintiff's residence in Stillwell, Kansas, with an effective date of September 6, 2017, through September 6, 2018. *Id.* (Pretrial Order ¶¶ 5, 7).

### *Water Line Failure*

On August 1, 2018, plaintiff left his home in Stillwell, Kansas, to travel to a wedding in Colorado. Doc. 67-1 at 5 (Miller Dep. 34:12–35:1). While plaintiff was away, his son discovered that a water line on an outside spigot at plaintiff's home had failed and was leaking water down the side of the house. *Id.* (Miller Dep. 35:2–16). The water leaked both inside and outside the home. *Id.* at 6 (Miller Dep. 40:4–6). The water ran down the basement wall and into a crack between the basement floor slab and the wall, saturating the soil underneath the home and soaking part of the walls. *Id.* (Miller Dep. 40:10–41:7). Plaintiff doesn't know the precise date when the water line failed, but he testified it occurred after August 1 because it wasn't leaking when plaintiff left town. *Id.* at 4–5 (Miller Dep. 33:17–24, 36:25–37:7). Also, plaintiff doesn't know how much water leaked from the broken water line into his home. *Id.* at 6 (Miller Dep. 39:19–40:9).

### *Spring 2018 Cattle Trough Water Discharge*

About 17 months earlier, in March 2018, a cattle water trough on plaintiff's property had a float valve that malfunctioned. This malfunction caused a 77,000-gallon spike in water usage

for that month.  Doc. 67-1 at 5–6, 10 (Miller Dep. 37:8–38:24, 91:3–14).  The trough was about 100 yards away and downhill from plaintiff's home.  *Id.* at 5 (Miller Dep. 37:17–38:12).  Plaintiff testified that none of the water from the cattle trough reached his home, and thus, it didn't cause any of the damage he is claiming in this lawsuit.  *Id.* at 6 (Miller Dep. 38:8–24).

Since 2013, plaintiff has spent the winter months in Arizona.  Doc. 73-2 at 2–3 (Miller Dep. 18:4 –19:1).  He usually goes to Arizona sometime in November and then returns to Kansas in April, with a couple of visits to Kansas in between.  *Id.*  When the cattle trough water discharge occurred in March 2018, plaintiff was in Arizona caring for his wife, who passed away on March 12, 2018.  *Id.* at 4 (Miller Dep. 24:20–22).  When the water line break occurred in August 2018, plaintiff doesn't know if he even remembered the cattle trough water discharge because it had occurred around the same time his wife passed away, and he had "a lot of other things going on[.]"  *Id.* at 21 (Miller Dep. 135:9–25).  Also, plaintiff's son uses the water trough for his cattle.  *Id.* at 22 (Miller Dep. 136:1–4).  So, it was plaintiff's son—not plaintiff—who fixed the broken float valve.  *Id.*

### *Insurance Claim Made to Defendant*

On September 7, 2018, plaintiff submitted an insurance claim to defendant claiming damage to his home.  Doc. 61 at 3 (Pretrial Order ¶ 8).  Defendant hired Laurence Fehner, an engineer, to inspect plaintiff's home.  Doc. 67-3 at 4 (Cline Dep. 29:7–30:12).  During the on-site inspection, plaintiff told Mr. Fehner that he believed the damage was caused by a large water leak that occurred in the spring of 2018, and he supplied Mr. Fehner with water bills showing a large spike in water usage in the spring months of 2018.  Doc. 67-4 at 2–4 (Fehner Dep. 39:23–40:19, 41:23–42:8, 99:5–100:9); *see also* Doc. 67-9 at 2 (Fehner October Report) (documenting that plaintiff "felt that the major water loss occurred while he was away during the spring" and

3

reported that his recent review of water records showed "a large spike in water usage reported in April 2018"). But, Mr. Fehner's notes from his inspection identify the date of loss as August 3, 2018. Doc. 73-3 at 1.

During his inspection, Mr. Fehner observed settlement and heave in plaintiff's home, and he determined that it was pre-existing differential movement. Doc. 67-9 at 6–7 (Fehner October Report). Mr. Fehner concluded that the reported water loss may have exacerbated the movement, but he found that the conditions had "developed over the years due to the swelling and shrinkage of the expansive clay subsoils beneath the home." *Id.* Based on Mr. Fehner's inspection, defendant determined that the Policy doesn't provide coverage for plaintiff's insurance claim. Doc. 67-3 at 4 (Cline Dep. 31:21–32:10). And, on October 25, 2018, defendant denied plaintiff's insurance claim. Doc. 61 at 3 (Pretrial Order ¶ 12); *see also* Doc. 67-10 (Denial Letter).

### *Plaintiff Disputes Defendant's Denial of the Claim and Hires an Architect*

Plaintiff hired Paul Minto, an architect, to inspect his home and prepare a report "to counterbalance Mr. Fehner's opinion." Doc. 67-2 at 8 (Minto Dep. 128:11–129:16). Mr. Minto inspected plaintiff's home on April 10, 2019. *Id.* at 4 (Minto Dep. 94:25–95:13). Plaintiff provided Mr. Minto with a copy of Mr. Fehner's October Report and defendant's letter denying his insurance claim. *Id.* at 3–4 (Minto Dep. 93:6–94:13). Plaintiff never told Mr. Minto that the water from the spring 2018 cattle trough water discharge never reached his home. Doc. 67-1 at 11 (Miller Dep. 100:19–23). Plaintiff testified that he never discussed the date of the damage with Mr. Minto. *Id.*

In August 2019, Mr. Minto began preparing a report based on his inspection of plaintiff's home. Doc. 67-2 at 7 (Minto Dep. 122:14–123:2). On August 29, 2019, Mr. Minto emailed

plaintiff a chart showing water usage on plaintiff's property. *Id.* at 5 (Minto Dep. 114:22–114:25); *see also* Doc. 67-11 at 1 (Aug. 29 Email). Mr. Minto wrote in the email to plaintiff: "Look this over and make sure it correlates to your understanding. I'm trying to show how much water beyond your usual consumption was leaked into the home." Doc. 67-11 at 1 (Aug. 29 Email). Plaintiff responded: "That looks right." *Id.*

On September 12, 2019, Mr. Minto emailed plaintiff a draft of his report. Doc. 67-2 at 6–7 (Minto Dep. 121:14–24, 122:14–125:2); *see also* Doc. 67-12 at 1 (Sept. 12 Email); Doc. 67-13 (Draft Report). Mr. Minto's draft report agreed with Mr. Fehner's report that the "sudden water loss that occurred in March 2018 has exacerbated the differential subsoil movement conditions that are at this home." Doc. 67-13 at 1 (Draft Report). It also included charts showing water usage in Spring 2018. *Id.* at 2–3. The draft described a "slow motion bomb of sort[s] [that] exploded beneath the Home, set up by the dry weather and triggered by the leak." *Id.* at 4. The report's summary referred to the "amount of water" and "the duration of the saturation" as causes of the damages to plaintiff's home. *Id.* at 11. Mr. Minto testified that the "amount of water" referred to the tens of thousands of gallons of water discharged in spring 2018 and the "duration of saturation" referred to a beginning date in March 2018. Doc. 67-2 at 12 (Minto Dep. 162:24–164:9).

But, plaintiff testified that he knew in September 2019 that the Spring 2018 water discharge from the cattle trough had nothing to do with the insurance claim he was making for damage to his home. Doc. 67-1 at 14 (Miller Dep. 138:12–16). Yet, plaintiff never told Mr. Minto that his draft report included calculations about the Spring 2018 water discharge that had nothing to do with his insurance claim for damage to his home. Doc. 67-2 at 9 (Minto Dep. 131:21–132:2).

Mr. Minto provided plaintiff his final report dated September 13, 2019. *Id.* (Minto Dep. 132:3–133:11); *see also* Doc. 67-14 (Sept. 13 Email attaching Minto Report). Mr. Minto's final report contained the same observations and conclusions that he had included in his draft report. Doc. 67-14 at 3–14 (Minto September Report). Plaintiff submitted Mr. Minto's September Report to defendant for review. Doc. 67-3 at 6 (Cline Dep. 51:8 –52:13). Defendant sent a letter to plaintiff explaining that it had reviewed Mr. Minto's September Report (and other documents) and that it was reaffirming its denial of coverage as explained in its October 25 letter. *Id.* at 7 (Cline Dep. 56:19–24); Doc. 67-15 (Sept. 30 Letter). Plaintiff testified that he never told defendant that the Spring 2018 water discharge was unrelated to his insurance claim. Doc. 67-1 at 13–14 (Miller Dep. 137:23–138:8).

### *Plaintiff's Disclosures in this Lawsuit*

On December 30, 2020, plaintiff served his initial disclosures under Fed. R. Civ. P. 26(a)(1). Doc. 67-16. The Initial Disclosures identified (1) Mr. Fehner's October Report and (2) Mr. Minto's September Report as documents in plaintiff's "possession, custody or control" which plaintiff "may use to support [his] claims or defenses in this action[.]" *Id.* at 2. Both Mr. Fehner's October Report and Mr. Minto's September Report referred to the Spring 2018 water discharge from the cattle trough which had no relation to plaintiff's insurance claim. On January 8, 2021, plaintiff served supplemental Rule 26 disclosures. Doc. 67-17. The supplemental disclosures again disclosed (1) Mr. Fehner's October Report and (2) Mr. Minto's September Report. *Id.* at 2. On January 12, 2021, plaintiff produced these two reports—both of which contained erroneous references to the Spring 2018 water discharge. Doc. 67-6.

On April 15, 2021, plaintiff served his expert witness designation under Fed. R. Civ. P. 26(a)(2). Doc. 67-7. Plaintiff listed Mr. Minto as his sole expert and asserted that the basis for

his opinions is "contained in his report." *Id.* at 1.  Also, it recited that Mr. Minto's report "outlines the facts or data which he considered in forming those opinions." *Id.*  Plaintiff attached Mr. Minto's September Report to the expert witness designation. *Id.* at 3–14.

### *Plaintiff's Deposition and Supplemental Disclosure*

Defendant noticed plaintiff's deposition for August 17, 2021.  Doc. 67-18; *see also* Doc. 67-1 at 1 (identifying date of plaintiff's deposition as August 17, 2021).  At the deposition, plaintiff served a supplemental expert witness disclosure under Fed. R. Civ. P. 26(a)(2).  Doc. 67-19 (Minto Revised Report); *see also id.* at 2 (identifying service date as August 17, 2021).  The supplemental expert disclosure identified Mr. Minto as plaintiff's sole expert and represented that he "is expected to testify consistent with his August 15, 2021 letter[.]" *Id.* at 1.  Mr. Minto's August 15 letter was attached to the supplemental expert witness disclosure.  Doc. 67-19 at 3–13 (Minto Revised Report).  The August 15 letter recited:

> We have been advised the abnormally large water usage cited in the initial report correlated to an event located elsewhere on the property.  Based on this new understanding, the calculation previously offered suspecting [tens] of thousands of gallons of water may have leaked from the failed pipe at the hose bibb has been deleted from this report.

*Id.* at 4 (Minto Revised Report).

During plaintiff's deposition, plaintiff testified consistently with Mr. Minto's "new understanding" of the facts by disclaiming that the Spring 2018 water discharge caused damage to his home.  Doc. 67-1 at 6 (Miller Dep. 38:8–24).  Plaintiff testified that he never caught the mistake in Mr. Minto's September Report referring to the Spring 2018 water discharge as contributing to the damage to his home.  Doc. 73-2 at 16 (Miller Dep. 101:2–5).  Plaintiff testified that he reviewed Mr. Minto's September Report but it was not "a very detailed review" and he didn't "pick up on" the reference to the Spring 2018 water discharge. *Id.* at 17 (Miller

7

Dep. 111:1–9). Thus, plaintiff never told Mr. Minto that the Spring 2018 water discharge had no bearing on his insurance claim. *Id.* Plaintiff testified that he didn't remember clearly the spring 2018 water discharge because he lost his wife around the same time and "a lot of things were kind of blurred[.]" *Id.* at 21 (Miller Dep. 135:9–15).

## II. Legal Standard

Defendant asks the court to sanction plaintiff under its "inherent power to impose sanctions for . . . bad-faith conduct" and "litigation abuses[.]" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).[1] Indeed, the Supreme Court recognizes this inherent authority "includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Chambers*, 501 U.S. at 44–45). But, the Supreme Court cautions that courts must exercise this "inherent power" to impose sanctions "with restraint and discretion." *Chambers*, 501 U.S. at 44.

One kind of "permissible sanction is an 'assessment of attorney's fees'" which is an order "instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186 (quoting *Chambers*, 501 U.S. at 45). But, an order imposing attorney's fees in a civil case "must be compensatory rather than punitive in nature." *Id.* As the Supreme Court has explained, "the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id.* (quoting *Mine Workers v. Bagwell*,

---

[1] Defendant recognizes that plaintiff's conduct doesn't "fall neatly into the sanctions regimes in Rule 11 or Rule 37" because plaintiff never made the allegation about the Spring 2018 water discharge in a pleading or motion, thus violating Rule 11, and plaintiff never failed to respond to discovery, thus implicating Rule 37. Doc. 67 at 12–13. But, defendant correctly asserts, "the sanctioning scheme" of the Federal Rules doesn't displace the court's "inherent power to impose sanctions for" bad faith conduct. *Chambers*, 501 U.S. at 46. So, the court considers defendant's Motion for Sanctions under the legal standard recognizing the court's "inherent power" to impose sanctions. *Id.*

512 U.S. 821, 829 (1994)). So, under this framework, "a court's shifting of fees is limited to reimbursing the victim" and includes "only those attorney's fees incurred because of the misconduct at issue." *Id.*

### III. Analysis

Defendant argues that the court should sanction plaintiff because he knowingly misled defendant about the extent and duration of the water leak at his home by suggesting that the 77,000-gallon spike in water usage from the spring 2018 cattle trough water discharge had contributed to the damage claimed under the Policy. Plaintiff responds, arguing that the court should not sanction him for a mistake made by defendant's engineer—Mr. Fehner—and adopted by his expert—Mr. Minto—when the record doesn't show any evidence of fraud or bad faith on plaintiff's part. Here, the court need not resolve whether plaintiff's failure to correct either expert's understanding of the spring 2018 water discharge until his deposition in August 2021 amounted to bad faith or just a simple mistake. Instead, the court concludes, defendant's requested sanctions aren't warranted on the facts presented.

*First*, defendant asks the court to issue an Order prohibiting plaintiff's expert—Mr. Minto—from offering his opinion testimony. But, defendant never explains why precluding the opinions of plaintiff's expert is an appropriate remedy for the conduct alleged. Defendant makes the conclusory assertion that it incurred "prejudice and expense" because plaintiff "held off telling the truth for ten months in this litigation after [he] had repeatedly pointed to Architect Minto's lie-based report as containing the facts of the case and the opinions of their expert." Doc. 74 at 10–11. But, defendant never identifies how it incurred any "prejudice or expense" from plaintiff's supplemental disclosure about the Spring 2018 water discharge. To the contrary, the record shows that plaintiff served Mr. Minto's revised report in August 2021, *see* Doc. 67-19

9

(Minto Revised Report), more than six weeks before defendant deposed Mr. Minto, *see* Doc. 67-2 at 1 (identifying the date of Mr. Minto's deposition as Sept. 30, 2021).  Moreover, both Mr. Minto's original report and his revised report opined that a water loss "exacerbated the differential subsoil movement conditions that are at this home" when water "ran down into the subsoil beneath the basement floor slab causing it to heave an additional amount" which, in turn, "caused additional movement of the basement floor slab, the walls of the stairway and to a lesser extent the common walls causing . . . significant and damaging additional differential movement and distortion."  *See* Doc. 67-5 at 11–12 (Minto September Report) (emphasis omitted); *see also* Doc. 67-19 at 12–13 (Minto Revised 2021 Report) (emphasis omitted) (reciting the same).  The supplemental disclosure about the Spring 2018 water discharge didn't change Mr. Minto's conclusion that movement of subsoil caused damage to plaintiff's house.  And, as discussed in the court's contemporaneously-issued Memorandum and Order granting defendant's Motion for Summary Judgment, the Policy specifically excludes claims for damage caused by that type of "Earth Movement."  So, Mr. Minto's revised report doesn't prejudice defendant's summary judgment arguments.  Just the opposite, Mr. Minto's revised report lends support to defendant's arguments that defendant deserves summary judgment because the Policy doesn't provide insurance coverage for plaintiff's claimed damages caused by "Earth Movement."  Thus, the court declines to exclude Mr. Minto's opinions as a sanction because defendant hasn't shown that it sustained any prejudice or expense from the supplemental expert disclosure made in August 2021.

*Second*, defendant asks the court to award the attorney's fees and expenses defendant incurred for plaintiff's deposition and for preparing this Motion for Sanctions.  But again, defendant fails to show that it incurred any "prejudice or expense" that would entitle it to the

10

sanction of an attorney's fee award.  For the court to issue an attorney's fee award, it must find that an award here would go "no further than to redress the wronged party 'for losses sustained'" and that an award doesn't "impose an additional amount as punishment for the sanctioned party's misbehavior."  *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186 .  The court can't make that finding here to justify an award of attorney's fees.  Defendant noticed plaintiff's deposition for August 17, 2021.  Doc. 67-18.  Plaintiff served his supplemental expert witness disclosures at the deposition, *see* Doc. 67-19, and the record shows that defendant proceeded with the deposition as scheduled, *see* Doc. 67-1 at 1 (identifying date of plaintiff's deposition as August 17, 2021).  Defendant never asserts that it asked to continue the deposition or that a continuance was necessary based on the supplemental expert disclosure produced that same day.  Also, the record shows that defendant's counsel questioned plaintiff some about the spring 2018 water discharge.  But, this topic was just a small portion of the information covered at plaintiff's deposition.  In sum, defendant hasn't identified any harm it sustained from taking plaintiff's deposition it originally noticed on August 17, 2021, such that an award of the attorney's fees incurred for plaintiff's deposition is warranted.

Also, the court declines to award defendant its attorney's fees for preparing this motion.  In reaching this decision, the court doesn't condone plaintiff's failure to correct the misunderstanding about the spring 2018 water discharge in a more timely fashion and, instead, waiting until his deposition in August 2021.  But, the court finds on the facts here that defendant's requested sanctions aren't warranted.  Thus, the court also concludes defendant isn't entitled to its fees for preparing this motion.[2]

---

[2]   Also, the court declines plaintiff's request to award his fees and expenses for responding to the Motion for Sanctions.  Doc. 73 at 9 ("Considering its incredibly weak case against [plaintiff], Defendant should pay for [plaintiff's] fees and expenses in responding.").  Plaintiff hasn't shown that defendant's

In sum, the court exercises its discretion and denies defendant's requested sanctions. Defendant hasn't shown that it has sustained a loss or incurred prejudice from plaintiff's late disclosure about the spring 2018 water discharge. Thus, the court concludes, defendant isn't entitled to the sanctions it seeks.

### IV.     Conclusion

For reasons explained, the court denies defendant's Motion for Sanctions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Great American Insurance Company's Motion for Sanctions (Doc. 66) is denied.

**IT IS SO ORDERED.**

**Dated this 4th day of May, 2022, at Kansas City, Kansas.**

                                                      s/ Daniel D. Crabtree
                                                    **Daniel D. Crabtree**
                                                    **United States District Judge**

---

filing of the Motion for Sanctions amounts to sanctionable conduct that would entitle plaintiff to an attorney's fee award.